IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| **FAR EAST ENERGY CORPORATION** | § | Case No. 15-35970 |
| | § | |
| Debtor | § | |

### PRIME RATE'S EMERGENCY MOTION FOR RELIEF FROM THE AUTOMATIC STAY

PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(A), THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS. IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE. IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST 7 DAYS BEFORE THE HEARING. IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING. EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

THERE WILL BE A HEARING ON THIS MOTION ON JANUARY 5, 2016 AT 10:00 A.M. IN COURTROOM 400, 515 RUSK, HOUSTON, TX 77002.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

THE MOVANT REQUESTS EXPEDITED CONSIDERATION TO OCCUR BEFORE DECEMBER 18, 2015.

TO THE HONORABLE DAVID R. JONES, CHIEF UNITED STATES BANKRUPTCY JUDGE:

### Preliminary Statement

1.     Far East Energy Corporation (the "Debtor") filed the above-captioned voluntary Chapter 7 bankruptcy case on November 10, 2015 (the "Petition Date"). Prime Rate Premium Finance Corporation, Inc. ("Prime Rate") is an insurance-premium finance company. Under the

Premium Finance Agreement signed by the Debtor in August 2015 and as amended in September 2015 (the "Finance Agreement")[1], Prime Rate agreed to finance for the benefit of the Debtor premium amounts totaling $65,766.00 for several insurance policies (collectively, the "Policies"), including general liability and umbrella policies. Prime Rate's claim against the Debtor (at least $39,461.10 as of the Petition Date) is secured by the unearned premiums under the Policies. The Debtor did not make the monthly payment of $5,637.30 due on November 11, 2015. As of the Petition Date, the value of the Collateral was, upon information and belief, approximately $44,260. The value of Prime Rate's collateral (in the form of unearned premiums) is projected to decrease daily by $169.12.

## Jurisdiction and Venue

2. The Court has jurisdiction under 28 U.S.C. § 1334 and the standing order of reference of the District Court. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## The Finance Agreement

3. An insurance premium finance agreement is essentially a loan secured by a purchase money security interest.[2] The insured makes a down payment, and funds the balance of the premium with an advance from the premium finance company. Although the entire premium is typically prepaid to the insurer, the insurer "earns" the premium daily on a pro-rated basis. Accordingly, at the beginning of coverage, 100% of the prepaid premiums are unearned (unless subject to any minimum earned premium) by the insurer, and the balance of the unearned premiums diminishes each day as the insurer gradually earns its premiums.[3] If the policy is

---

[1] A true and correct copy of the Finance Agreement is attached as **Exhibit A**. Prime Rate is not the insurer.

[2] *See In re JII Liquidating, Inc.*, 344 B.R. 875, 879 n.3 (Bankr. N.D. Ill. 2006).

[3] *See, e.g., In re Megamarket of Lexington, Inc.*, 207 B.R. 527, 532 – 33 (Bankr. E.D. Ky. 1997); *and In re Rocor Int'l, Inc.*, 380 B.R. 567, 569 (B.A.P. 10th Cir. 2007).

canceled before the end of the term, the insurer must refund the unearned portion of the premiums.[4]

4.     Under the Finance Agreement, the Debtor granted Prime Rate a security interest in any and all unearned or return premiums and dividends that may become payable under the Policies for which the premiums are being financed (as further described in the Finance Agreement, the "Collateral").[5]  Under Texas law, the filing of a financing statement is not necessary to perfect the security interest under a premium finance agreement.[6]  The security interest in unearned premiums attaches and is perfected upon the funding of the policy.[7]  Under the Finance Agreement, the Debtor also grants Prime Rate (through a power of attorney) the right to cancel the Policies in the event the Debtor defaults.[8]

**Cause exists to terminate the automatic stay**

5.     The Court should terminate the automatic stay with respect to Prime Rate under 11 U.S.C. § 362(d)(1) to allow Prime Rate to exercise its remedies under the Finance Agreement and applicable law.  Under § 362(d)(1), the Court "shall" grant relief from the automatic stay for cause, including the lack of adequate protection.  Prime Rate lacks adequate protection because the value of the Collateral decreases daily.  Prime Rate's claim is projected to be under-secured

---

[4] *Id*.

[5] Finance Agreement § 4.

[6] Texas law governs the Finance Agreement.  *See* Finance Agreement § 22.  *See also* TEX. INS. CODE § 651.157 ("Filing of a premium finance agreement or a financing statement is not necessary to perfect the agreement as a secured transaction against a creditor, subsequent purchaser, pledgee, encumbrancer, successor, or assign of the insured or any other party."); *and* TEX. BUS. & COMM. CODE § 9.109(d)(8) (stating that UCC Article 9, as adopted by Texas, does not apply to "a transfer of an interest in or an assignment of a claim under a policy of insurance . . . .").  The "vast majority of courts which have addressed whether the insurance exclusion provision of Article 9 applies to transactions in the premium finance insurance company context have found the insurance exclusion provision prohibits the application of Article 9 to *any* transaction stemming from a premium financing company insurance transaction or *any* transaction involving collateral consisting of unearned insurance premiums within that context."  *Am. Bank, FSB v. Cornerstone Community Bank*, 903 F.Supp.2d 568, 575 (E.D. Tenn. 2012) (emphasis in original; citing cases).

[7] *See*, *e.g.*, *In re St. James Inc.*, 402 B.R. 209, 215 (Bankr. E.D. Mich. 2009) (citing cases).

[8] Finance Agreement § 2; *see also* TEX. INS. CODE § 651.160 ("A premium finance agreement may contain a power of attorney that enables the insurance premium finance company to cancel any or all of the insurance contracts listed in the agreement as provided by Section 651.161.").

as of December 8, 2015, and the Collateral will continue to decrease daily. The Trustee has not indicated that he will cure the past-due payments or make any future payments under the Finance Agreement, even though the Debtor is benefiting from the existing coverage under the Policies. Additionally, unless the Court waives the 10-day notice requirement under Texas law, Prime Rate will suffer at least 10-days' worth of collateral diminution before it can exercise its remedies under the Finance Agreement. Cause therefore exists to terminate the automatic stay with respect to Prime Rate.[9]

6. Cause also exists to terminate the automatic stay under 11 U.S.C. § 362(d)(2). As of the filing of this Motion, the Debtor lacks equity in the Collateral, and there is no reorganization in prospect because the Debtor filed a Chapter 7 bankruptcy case.

7. Prime Rate requests that the Court enter the order attached hereto as **Exhibit B**. Under the terms of the proposed order:

- The automatic stay is terminated to allow Prime Rate to immediately exercise its remedies under the Finance Agreement and applicable law, including without limitation canceling the Policies, collecting the unearned premiums, and applying them to Prime Rate's claim.

- Any notice requirements under the Finance Agreement and applicable law are waived. Normally, under Texas law, Prime Rate is required to provide ten days' notice before cancelling the Policies.[10]

- To the extent Prime Rate exercises its remedies, any available excess proceeds of the Collateral after payment of Prime Rate's claim (including expenses and attorney's fees) will be turned over to the Trustee, and the Policies are deemed to be canceled as of the Petition Date to the extent permitted under the Finance Agreement and applicable law.

- The 14-day stay under Bankruptcy Rule 4001(a)(3) is waived.

---

[9] *See*, *e.g.*, *In re U.S. Repeating Arms. Co.*, 67 B.R. 990, 1000 (Bankr. D. Conn. 1986) (granting relief from the stay to allow the premium finance company to apply the collateral funds to its claim); *In re Univ. Motor Exp., Inc.*, 72 B.R. 208, 211 (Bankr. W.D. N.C. 1987) (granting relief from the stay to allow the lender to cancel the insurance policies and apply any unearned premiums); *In re JII Liquidating, Inc.*, 344 B.R. 875, 890 (Bankr. N.D. Ill. 2006) (granting relief from the stay to allow the lender to receive the unearned premiums); *In re QA3 Financial Corp.*, Case No. 11-80297 (Bankr. D. Neb. April 5, 2011) (finding cause for relief from the stay because the unearned-premium collateral was declining in value daily and because the debtor offered no adequate protection).

[10] TEX. INS. CODE § 651.161.

- However, even with the termination of the automatic stay, Prime Rate will not cancel the Policies if the past-due payment(s) are promptly paid and future payments are timely made.

**Request for Expedited Consideration and Certification**

8. Prime Rate requests that the Court consider this Motion before December 18, 2015 to minimize the extent of Prime Rate's possible deficiency claim against the bankruptcy estate. Prime Rate certifies that the value of the Collateral is projected to be less than the amount of Prime Rate's claim on or about December 8, 2015, and will continue to decrease daily by approximately $169.12.

**WHEREFORE**, Prime Rate respectfully requests that the Court enter an order granting this motion in the form attached as **Exhibit B**, and granting such other and further relief to Prime Rate as is appropriate and just under the circumstances.

**Dated: December 9, 2015**

Respectfully submitted,

**WINSTEAD PC**
2728 N. Harwood Street
Dallas, Texas  75201
(214) 745-5400
(214) 745-5390 (Facsimile)

By:  */s/ Weiting Hsu*
Erik Weiting Hsu – SBT # 24046116

**ATTORNEYS FOR PRIME RATE PREMIUM FINANCE CORPORATION, INC.**

**Certificate of Conference**

I hereby certify that on December 4 through December 9, 2015, I emailed the Chapter 7 Trustee regarding the relief requested in this motion. The Trustee has not responded as of the filing this motion. On December 7, 2015, I spoke and emailed with Debtor's counsel regarding the relief requested in this motion. The Debtor is unable to take a position on this motion.

*/s/ Weiting Hsu*
One of Counsel

## Certificate of Service

I hereby certify that on December 9, 2015, notice of this document will be electronically mailed to the parties registered or otherwise entitled to receive electronic notices in these cases pursuant to the Electronic Filing Procedures in this District, and a true and correct copy of this document will be served via First-Class Mail, postage prepaid, on the parties on the attached service list.

*/s/ Weiting Hsu*
One of Counsel